IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DANTE SMALL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 3:21-CV-1585-MAB |
| | ) |
| LYNN PITTMAN, NOREEN BAKER, | ) |
| and PATRICK RIGGS, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**BEATTY, Magistrate Judge:**

This matter is before the Court on the motions for summary judgment filed by Defendants Lynn Pittman and Noreen Baker (Doc. 51) and Defendant Patrick Riggs (Doc. 61). Also before the Court is Plaintiff's motion to strike Defendants Pittman and Baker's reply brief in support of their motion for summary judgment (Doc. 67). For the reasons explained below, Plaintiff's motion to strike is denied and Defendants' motions for summary judgment are granted.

## BACKGROUND

Plaintiff Dante Small is an inmate in the Illinois Department of Corrections, and he filed this civil rights action pursuant to 42 U.S.C. § 1983 alleging violations of his constitutional rights at Lawrence Correctional Center (Doc. 10; *see also* Doc. 12). In particular, Plaintiff is proceeding on an Eighth Amendment claim against Defendant Patrick Riggs, a correctional officer, alleging that Riggs used excessive force when he slammed a cell door on Plaintiff's foot (Doc. 12). Plaintiff is also proceeding on an Eighth

Amendment claim against Defendants Dr. Lynn Pittman and Nurse Noreen Baker, alleging they were deliberately indifferent to his serious medical needs when they gave him crutches, but not a low gallery permit, and he later fell while trying to go down the stairs on his crutches (Doc. 12).

Dr. Pittman and Nurse Baker filed their motion for summary judgment on October 11, 2023 (Doc. 51; *see also* Docs. 52, 53), and Officer Riggs filed his on November 20, 2023 (Doc. 61; *see also* Doc. 62). Plaintiff filed a response in opposition to both motions (Doc. 65, pp. 1–23; 25–35). His response to Defendants Pittman and Baker's motion for summary judgment argued, in part, that the declaration Dr. Pittman submitted was unsigned (Doc. 65, p. 2). Dr. Pittman and Nurse Baker then filed a reply brief,[1] and attached a signed declaration from Dr. Pittman (Doc. 66; Doc. 66-1). Plaintiff moved to strike Defendants' reply brief and Dr. Pittman's declaration (Doc. 67), to which Defendants filed a response in opposition (Doc. 68).

## PLAINTIFF'S MOTION TO STRIKE

Dr. Pittman submitted an unsigned, undated declaration in support of her motion for summary judgment (Doc. 52-3). There was a note in the signature line that said "Dr. Pittman has received, but has not had the opportunity to execute this declaration. Defendant will timely provide an executed version" (Doc. 52-3, p. 3). By the time Plaintiff filed his response approximately two months later, Dr. Pittman still had not submitted the executed version of her declaration. She finally submitted it as an attachment to her

---

[1] Officer Riggs did not file a reply brief.

reply brief (Doc. 66-1), which Defendants asserted was warranted because Plaintiff filed "a brief over the allotted [20] page-limit where Plaintiff purportedly places material facts in dispute and misinterprets evidence cited in support of his Response." (Doc. 66). *See* SDIL-LR 7.1(a)(3) ("[N]o brief shall be submitted which is longer than 20 double-spaced typewritten pages in 12-point font."); LR 7.1(a)(4) ("Reply briefs . . . should be filed only in exceptional circumstances.").

Plaintiff asks the Court to strike Defendants' reply brief because his oversized brief does not amount to an exceptional circumstance justifying the need for a reply brief given that he is representing himself and his brief is handwritten (not typewritten) (Doc. 67). He also asks the Court to strike Dr. Pittman's executed declaration because it is untimely and the signature is not hers (*Id.*).

To begin with, the Court takes no issue with Plaintiff's handwritten 22.5-page response in opposition to Dr. Pittman and Nurse Baker's motion for summary judgment. *See* SDIL-LR 7.1(a)(3) (limiting briefs to 20 double-spaced typewritten pages in 12-point font but noting that page limit is "exclusive of" responses to Statements of Material Facts and Statements of Additional Material Facts, amongst other things); SDIL-LR 56.1(e) (same). However, the length of Plaintiff's response brief was not Defendants' only reason for filing a reply. They also used their reply to address Plaintiff's arguments and additional facts that he asserted in his response brief (Doc. 66, p. 1 para. 5), which is an appropriate reason for filing a reply brief. *See* SDIL-LR 56.1(d). Consequently, there is no reason to strike Defendants' reply brief.

As for Dr. Pittman's declaration, she signed it electronically via DocuSign.

DocuSign allows a signatory to use a predefined font to affix their electronic signature to a document, as opposed to drawing their signature by hand. Dr. Pittman obviously used the predefined font-option, which perfectly explains why her signature on the Declaration does not match her handwritten signatures in the medical records. She provided documentation authenticating the digital signature as hers (Doc. 68-2, 68-3).

With respect to the timing of Dr. Pittman's executed declaration, she submitted documentation showing that she signed it very early on the morning of October 12, 2023, at 1:34 a.m. central time to be exact (Doc. 68-1), which was mere hours after her motion for summary judgment was filed with the Court (Doc. 51).[2] The Court can only assume that defense counsel inadvertently neglected to file the executed version in the days that followed. That inadvertent mistake is excused. The Court routinely allows parties to submit an unexecuted "placeholder" declaration with their summary judgment briefing, to be replaced at a later date by an executed version. *See* FED. R. CIV. P. 56(e) (giving courts discretion to allow late-filed affidavits—"If a party fails to properly support an assertion of fact . . . as required by Rule 56(c), the court may . . . give an opportunity to properly support or address the fact . . . ."). Here, the contents of Dr. Pittman's executed declaration are the exact same as the contents of the unexecuted version. And the contents are limited to facts based on her personal knowledge that would have been admissible and to which she would be competent to testify. Thus, accepting the untimely filed executed declaration causes no prejudice to Plaintiff or otherwise result in any unfairness. Rather,

---

[2] The Notice of Electronic Filing indicates that Dr. Pittman and Nurse Baker's Motion for Summary Judgment was filed on October 11, 2023 at 9:00pm (central time).

accepting the untimely filed executed declaration allows the Court to decide the motion for summary judgment on the merits rather than allowing a presumed oversight to determine the outcome to any extent. *Atkins v. Gilbert*, 52 F.4th 359, 361 (7th Cir. 2022) ("[W]e prefer to decide cases on the merits when we can....") (citing *Boutros v. Avis Rent A Car Sys.*, LLC, 802 F.3d 918, 924 (7th Cir. 2015)). *Cf. Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 631 (7th Cir. 2009) ("Our cases articulate a policy of favoring trial on the merits over default judgment.") (citing *Sun v. Bd. of Trustees of Univ. of IL*, 473 F.3d 799, 811 (7th Cir. 2007)).

Accordingly, Plaintiff's motion to strike is denied.

### DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

#### FACTS

On the evening of November 23, 2019, Plaintiff was in the dayroom (Doc. 61-1, pp. 17). He had some of his shower stuff but realized he forgot his towel (*Id.*). He asked the correctional officers in the control room to open the dayroom door so he could go back to his cell to use the bathroom and grab his towel, but the officers did not do so (*Id.* at pp. 17–18, 19). They did not open the dayroom doors until evening "lockup time" (Doc. 61-1, pp. 14, 18).

Plaintiff testified that lockup time is when "the dayroom time [is] over" and the inmates go back to their cells before an officer conducts the evening count (*Id.* at p. 15; *see also id.* at pp. 24–26). He further testified that the inmates normally close their own cell doors, and an officer comes by afterwards to make sure the doors are locked (*Id.* at p. 79). Officer Riggs similarly stated that "[a]fter dayroom, all individuals are to lock up in their

cell and a count is conducted" (Doc. 61-3, para. 6).

When the doors to the dayroom were opened, Plaintiff went back to his cell and grabbed his towel (Doc. 61-1, p. 18). When he went to leave his cell, however, Officer Riggs was in the doorway (*Id.* at pp. 18, 20). Plaintiff asked Officer Riggs if he could go shower (*Id.* at p. 18). According to Plaintiff, Officer Riggs answered something to the effect of, "fuck no, you're not getting in the shower," and pushed the door of Plaintiff's cell closed, which hit Plaintiff's foot (*Id.* at pp. 18–19; *see also id.* at pp. 20–21, 21–22). Plaintiff testified the door did not hit his foot very hard and he was not injured (*Id.* at p. 22; *see also id*. at p. 19). Plaintiff then said something like, "you didn't have to push the door on my foot" and asked to speak to a lieutenant (*Id.* at pp. 19, 22). Officer Riggs then "slam[ed] the door" against Plaintiff's foot (*Id.*). Plaintiff testified that he was in shower shoes at the time and he was screaming in pain (*Id.* at pp. 22–23, 24).

Plaintiff's testimony was light on the details about the nature of his injury other than to say it was a throbbing pain, "[i]t stay[ed] sore for a while," it was sore when he bumped his foot against something, and it hurt when he tried to walk on it or put any type of pressure on it (Doc. 61-1, pp. 32, 54). He testified that he and some of the other inmates started calling for medical attention but Officer Riggs "didn't really do anything" (*Id.* at p. 24). When Riggs came back through about 30 minutes later to do the nighttime count, Plaintiff told Riggs that his foot was messed up and once again asked to speak to a lieutenant and to be taken to the health care unit (*Id.* at pp. 24, 25–26). Riggs did not oblige (*Id.* at pp. 26–27).

The next day, Plaintiff told a lieutenant and his wing officer that he needed

medical care, and he was taken to the health care unit (Doc. 61-1, pp. 26, 27). A nurse (who is not a Defendant) examined Plaintiff (Doc. 52-1, p. 1). It is unclear whether Plaintiff's foot was swollen because on the section of the note asking about the "presence of swelling," the nurse wrote "yes;" but at the bottom of the note, she wrote "Ø swelling," which is medical shorthand for no swelling (*Id.*). However, the nurse unequivocally noted that there was no discoloration or bruising, no misalignment, skin integrity was "good," and Plaintiff's circulation, distal pulses, and capillary refill were all normal (*Id.*). The nurse did not think the injury was serious enough to refer Plaintiff to see the doctor (*see id.*). Instead, she gave Plaintiff an ace bandage and enough Tylenol to last three days and instructed him to return to sick call if he experienced an increase in pain, numbness, or skin color changes (*Id.; see also* Doc. 61-1, p. 30).

Three days later, on November 27, 2019, Plaintiff saw Dr. Lynn Pittman on the Medical Doctor call line with complaints of continued pain in the side of his left foot ("lat L foot") (Doc. 52-1, p. 2).[3] According to Plaintiff, he was unable to put much, if any, weight on his foot (Doc. 61-1, p. 32). Dr. Pittman ordered an x-ray, as well as two-week medical permits allowing Plaintiff a low bunk—but not a low gallery cell—crutches, and an ace wrap (Doc. 52-1, p. 17; Doc. 66-1, para. 6). The x-ray was taken that same day and showed no abnormal bony alignment or fracture in his left foot (Doc. 66-1, para. 10 (Pittman. Declaration); *see also* Doc. 52-1, p. 16 (x-ray report)).

---

[3] Dr. Pittman also noted that Plaintiff had a toenail condition unrelated to his complaints of foot pain (Doc. 61-1, p. 1)

Nurse Noreen Baker transcribed the medical permits that Dr. Pittman ordered (Doc. 52-2, para. 7). As a licensed practical nurse, it was beyond the scope of Nurse Baker's practice and authority to determine whether an inmate needed a particular medical permit or to issue any medical permits (Doc. 52-2, para. 9; Doc. 66-1, para. 8). Only doctors and nurse practitioners (and presumably physician's assistants) can issue medical permits (Doc. 52-2, para. 9; Doc. 66-1, para. 8).

Plaintiff made it until December 9th without any problems on his crutches. But on that day, while on his way to chow, he fell going down the stairs on his crutches (Doc. 61-1, p. 34; Doc. 52-1, pp. 4, 5). He said he could not get up and officers got a wheelchair for him and took him to the healthcare unit, where he saw a nurse (who is a non-Defendant) (Doc. 61-1, p. 36; Doc. 52-1, pp. 4–5). A nurse practitioner (who is a non-Defendant) followed up with Plaintiff four days later (Doc. 52-1, p. 6). Plaintiff said he hit his head and hurt his back, shoulder, wrists, and leg in the fall (Doc. 61-1, p. 38; Doc. 52-1, p. 6). The nurse practitioner prescribed him two-month medical permits for a lower bunk, a lower gallery, and crutches (Doc 52-1, p. 6). She gave him a twelve-month prescription for Naproxen and a three-month prescription for muscle relaxers (*Id.*). At a follow-up several weeks later, Dr. Pittman diagnosed Plaintiff with a sprained ankle based on her observations and the imaging of Plaintiff's foot (Doc. 66-1, para. 11; Doc. 52-1, p. 8). Plaintiff continued receiving medical care throughout 2020 for his injuries (Doc. 52-1, pp. 8–15), but he did not report any foot or ankle pain after May 8, 2020 (*see id.* at p. 12, 13–15). Plaintiff admitted at his deposition that his foot no longer bothered him (Doc. 61-1, pp. 56–57).

**DISCUSSION**

Summary judgment is proper only if the movant shows that there is no genuine issue as to any material fact and they are entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). In deciding a motion for summary judgment, the court's role is not to determine the truth of the matter, and the court does not "weigh conflicting evidence, resolve swearing contests, determine credibility, or ponder which party's version of the facts is most likely to be true." *Stewart v. Wexford Health Sources, Inc.*, 14 F.4th 757, 760 (7th Cir. 2021). Instead, the court is to view the record and draw all reasonable inferences in the light most favorable to the non-moving party and decide if there is genuine dispute of material fact that requires a trial. *Id.*; *Hansen v. Fincantieri Marine Grp., LLC*, 763 F.3d 832, 836 (7th Cir. 2014). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Armato v. Grounds*, 766 F.3d 713, 719 (7th Cir. 2014) (citation omitted). *See also Maniscalco v. Simon*, 712 F.3d 1139, 1143 (7th Cir. 2013) ("Factual disputes are genuine only if there is sufficient evidence for a reasonable jury to return a verdict in favor of the non-moving party on the evidence presented, and they are material only if their resolution might change the suit's outcome under the governing law.") (citation and internal quotation marks omitted).

A. **Excessive Force Against Officer Riggs**

The Eighth Amendment, which prohibits "cruel and unusual punishments," has been interpreted to prohibit the "unnecessary and wanton infliction of pain" on prisoners in a correctional institution. *Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001) (citing *Hudson v. McMillian,* 503 U.S. 1, 5 (1992)). "[T]he core judicial inquiry" is whether the

prison official applied force "in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Outlaw*, 259 F.3d at 837 (quoting *Hudson*, 503 U.S. at 7). *Accord McCottrell v. White*, 933 F.3d 651, 663 (7th Cir. 2019) (quoting *Whitley v. Albers*, 475 U.S. 312, 320–21 (1986)). A number of factors are relevant in considering whether the use of force is unconstitutional, including (1) the need for the application of force; (2) the amount of force that was used; (3) the extent of the injury the force caused to the inmate; (4) the extent of the threat reasonably perceived by the officer; and (5) any efforts made to temper the severity of the force used. *McCottrell*, 933 F.3d at 663 (citing *Whitley*, 475 U.S. at 321).

Critically, "not 'every malevolent touch by a prison guard gives rise to a federal cause of action." *McCottrell*, 933 F.3d at 664 (quoting *Hudson*, 503 U.S. at 9). "To be cruel and unusual punishment, conduct . . . must involve more than ordinary lack of due care for the prisoner's interests or safety. . . . It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause . . . ." *Guitron v. Paul*, 675 F.3d 1044, 1045–46 (7th Cir. 2012) (quoting *Whitley v. Albers,* 475 U.S. 312, 319 (1986)). "[T]he quantum of force required for a constitutional violation is that which is 'repugnant to the conscience of mankind.'" *Fillmore v. Page*, 358 F.3d 496, 504 (7th Cir. 2004) (quoting *Hudson,* 503 U.S. at 10).

The facts of this case are similar to those in *Outlaw v. Newkirk,* 259 F.3d 833 (7th Cir. 2001). In *Outlaw*, a correctional officer opened the cuffport on a cell door to give the inmate inside a pair of gym shorts. *Id.* at p. 834. After the officer put the shorts through, the inmate put his hand in the cuffport to give the officer some garbage, and the officer

closed the cuffport door on his hand. *Id.* The Seventh Circuit held that, even if the inmate's version of the incident was accepted as true, the officer was entitled to summary judgment. *Id.* at 838, 839. The officer had a legitimate security reason to close the cuffport door because inmates at the maximum-security facility occasionally attempted to throw garbage or other deleterious materials and to even grab the guards through the cuffport door. *Id.* at 838, 839. Plaintiff only suffered superficial injuries to his hand, which suggested the amount of force the officer used in closing the cuffport door was at most *de minimis. Id.* at 840. And although the inmate claimed the officer did it on purpose because there was bad blood between the two of them, he did not identify any facts sufficient to raise a genuine issue as to whether the officer's use of force on that particular occasion was malicious and unjustifiable. *Id.* at 834, 835, 840. The Seventh Circuit explained that under the circumstances, "a rational jury could draw one of only two possible conclusions: that the incident was an accident, or that [the officer] deliberately and perhaps unnecessarily applied a relatively minor amount of force to achieve a legitimate security objective." *Id.* at 839. But "[n]either scenario would involve a use of force that was 'repugnant to the conscience of mankind.'" *Id.*

Here, as in *Outlaw*, Officer Riggs had a legitimate security reason to close the cell door. It is undisputed that, at the time of the incident, prison rules required inmates to be locked in their cells for evening head count. Based on Plaintiff's own version of the story, he was trying to leave his cell to go shower. Officer Riggs' purported use of force—closing Plaintiff's cell door—was in response to Plaintiff's attempt to leave his cell at time that

prison rules did not permit him to do so. Officer Riggs was simply trying to close the cell door in order to enforce and compel Plaintiff's compliance with the prison's rules.

Also similar to *Outlaw*, although Plaintiff claimed the incident caused him severe pain and that he was unable to bear any weight on his foot, his claim is not corroborated by any objective evidence. *See Outlaw*, 259 F.3d at 839. Less than 24 hours after the incident, a nurse noted that there was no misalignment of his bones, no discoloration or bruising, and the skin integrity was good, meaning the skin was intact and there were no visible wounds. An x-ray confirmed there was no misalignment or fractures in his foot. And Dr. Pittman concluded Plaintiff had suffered only a sprained ankle. While a plaintiff need not demonstrate a significant injury to state a claim for excessive force under the Eighth Amendment, *Outlaw*, 259 F.3d at 840, a relatively minor injury tends to show that the force served a proper security purpose and was not simply used maliciously and sadistically for the very purpose of causing harm. *Hendrickson v. Cooper*, 589 F.3d 887, 891 (7th Cir. 2009) (citing *Outlaw*, 259 F.3d at 837, 839); *Lunsford v. Bennett,* 17 F.3d 1574, 1582 (7th Cir.1994) ("This type of minor injury further supports our conclusion that at most this incident was a *de minimis* use of force not intended to cause pain or injury to the inmate."). *But see, e.g., Hudson,* 503 U.S. at 10 (ruling that correctional officers applied more than *de minimis* force when they punched and kicked an inmate while holding him in place, causing bruises, swelling, loosened teeth, and a cracked dental plate).

Finally, similar to *Outlaw*, there is a complete dearth of evidence that Riggs ever intended to make contact with Plaintiff, let alone harm him. "[T]he subjective motivations of the individual officers are of central importance in deciding whether force used against

a convicted prisoner violates the Eighth Amendment . . . ." *Graham v. Connor,* 490 U.S. 386, 398 (1989) (citing *Whitley*, 475 U.S. at 320–21). "[I]n order to survive a motion for summary judgment, the prisoner must have evidence that 'will support a reliable inference of wantonness in the infliction of pain.'" *Fillmore*, 358 F.3d at 504. Again, based on Plaintiff's own version of the story, Officer Riggs was trying to shut the cell door because the prison rules required inmates to be locked in their cells at that time and Plaintiff was trying to leave his cell. The first time did not work because Plaintiff's foot was in the way (but Plaintiff was admittedly uninjured). Plaintiff evidently did not move his foot, so when Officer Riggs pushed the door a second time—this time harder—it hit Plaintiff's foot again and injured him. Plaintiff, however, has simply not identified any facts that would allow a reasonable jury to infer that Officer Riggs knew Plaintiff's foot was still in the way and/or that he slammed the door maliciously and sadistically in order to hurt him.

As with *Outlaw*, when viewing the facts in a light most favorable to Plaintiff, a rational jury could only conclude that this incident was accidental, or that Officer Riggs applied a minor amount of force to achieve a legitimate security objective. Plaintiff is in large part responsible for his own injury given that he kept his foot in the way of the door despite knowing Officer Riggs was trying to close it in order to enforce a prison rule. Neither scenario involves a use of force that is "repugnant to the conscience of mankind." Officer Riggs is therefore entitled to summary judgment.

### B. Deliberate Indifference Against Dr. Pittman & Nurse Baker

To succeed on a claim of deliberate indifference, the plaintiff must demonstrate

that he suffered from an "objectively serious medical condition" that the defendant responded to with a "sufficiently culpable state of mind," namely deliberate indifference. *Goodloe v. Sood*, 947 F.3d 1026, 1030, 1031 (7th Cir. 2020) (citing *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016)). Defendants Pittman and Baker argue that Plaintiff cannot prove either prong of the deliberate indifference analysis (Doc. 52, pp. 6–10). The Court, however, opts to skip over the first prong—whether Plaintiff's foot injury was objectively serious—because, even if the Court assumes that it was, there is not sufficient evidence from which a jury could conclude that Dr. Pittman or Nurse Baker acted with deliberate indifference.

Deliberate indifference requires the plaintiff to show that the prison official actually knew of and consciously disregarded a serious risk to the prisoner's health. *Petties*, 836 F.3d at 728; *Holloway v. Delaware Cty. Sheriff*, 700 F.3d 1063, 1073 (7th Cir. 2012). "[M]ere negligence is not enough." *Petties*, 836 F.3d at 728. *See also McGee v. Adams*, 721 F.3d 474, 481 (7th Cir. 2013) ("Deliberate indifference is not medical malpractice."). "Even objective recklessness—failing to act in the face of an unjustifiably high risk that is so obvious that it *should* be known—is insufficient to make out a claim." *Petties*, 836 F.3d at 728. Rather, the deliberate indifference standard is "essentially a criminal recklessness standard, that is, ignoring a known risk." *McGee v. Adams*, 721 F.3d 474, 481 (7th Cir. 2013) (citation omitted). It requires a showing of something approaching "intentional wrongdoing" or "a total unconcern for the prisoner's welfare in the face of serious risks." *Holloway*, 700 F.3d at 1073; *Rasho v. Jeffreys*, 22 F.4th 703, 710 (7th Cir. 2022) (quoting *Rosario v. Brawn*, 670 F.3d 816, 821 (7th Cir. 2012)).

Here, the conduct at issue is Dr. Pittman and Nurse Baker's failure to issue Plaintiff a low gallery permit. Plaintiff did not provide any evidence that Dr. Pittman's decision not to provide him with a low gallery permit was so far outside the bounds of professional judgment that no other reasonable physician would have made the same decision. *See Petties*, 836 F.3d at 729 (a plaintiff can establish deliberate indifference by showing medical professional's decision was "such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such judgment.'") (citation omitted); *see also Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014) ("A medical professional is entitled to deference in treatment decisions unless 'no minimally competent professional would have so responded under those circumstances'").

Nor was Dr. Pittman's decision obviously wrong or blatantly inappropriate. *Pyles*, 771 F.3d at 409 ("A prisoner may establish deliberate indifference by demonstrating that the treatment he received was 'blatantly inappropriate.'") (citation omitted). After all, people outside of prison are frequently required to navigate stairs on crutches in their everyday lives. It is simply not feasible to eliminate every hazard that an individual on crutches might face. So while it might have been sensible to issue Plaintiff a low gallery permit, Dr. Pittman's decision not to do so is hardly reckless or demonstrative of a total unconcern for Plaintiff's welfare.

Additionally, the fact that another practitioner later ordered a low gallery permit is not sufficient to conclude that Dr. Pittman also should have done so because "evidence that *some* medical professionals would have chosen a different course of treatment is

insufficient to make out a constitutional claim." *Petties*, 836 F.3d at 729 (emphasis in original); *see also Pyles*, 771 F.3d at 409 ("Disagreement between a prisoner and his doctor, or even between two medical professionals, about the proper course of treatment generally is insufficient, by itself, to establish an Eighth Amendment violation."). Dr. Pittman is accordingly entitled to summary judgment.

For the same reasons outlined above, Nurse Baker is likewise entitled to summary judgment. Moreover, Nurse Baker had no authority to even prescribe medical permits to inmates on her own. So, there is simply no basis to find that she was deliberately indifferent to Plaintiff in failing to issue a low gallery permit, which the facts demonstrate she had no authority to issue in the first place.

## CONCLUSION

Plaintiff's motion to strike (Doc. 67) is **DENIED.** Defendants' Lynn Pittman and Noreen Baker's motion for summary judgment (Doc. 51) and Defendant Patrick Riggs' motion for summary judgment (Doc. 61) are both **GRANTED.** Plaintiff's claims are **DISMISSED with prejudice** and the Clerk of Court is **DIRECTED** to enter judgment in favor of Defendants and close this case on the Court's docket.

**IT IS SO ORDERED.**

DATED: September 25, 2024

s/ Mark A. Beatty
**MARK A. BEATTY**
**United States Magistrate Judge**

## NOTICE

Plaintiff is advised that this is a final decision ending his case in this Court. If Plaintiff wishes to contest this decision, he has two options: he can ask the undersigned to reconsider the Order or he can appeal to the Seventh Circuit.

If Plaintiff chooses to go straight to the Seventh Circuit, he must file a notice of appeal in the district court *within 30 days* from the entry of judgment. FED. R. APP. P. 4(a)(1)(A). The deadline can be extended for a short time only if Plaintiff files a motion showing excusable neglect or good cause for missing the deadline and asking for an extension of time. FED. R. APP. P. 4(a)(5)(A), (C). *See also Sherman v. Quinn*, 668 F.3d 421, 425 (7th Cir. 2012) (explaining the good cause and excusable neglect standards); *Abuelyaman v. Illinois State Univ.*, 667 F.3d 800, 807 (7th Cir. 2011) (explaining the excusable neglect standard). The current cost of filing an appeal with the Seventh Circuit is $505.00. The filing fee is due at the time the notice of appeal is filed. FED. R. APP. P. 3(e). If Plaintiff cannot afford to pay the entire filing fee up front, he must file a motion for leave to appeal *in forma pauperis* ("IFP motion") along with a recent statement for his prison trust fund account. *See* FED. R. APP. P. 24(a)(1)(C). The IFP motion must set forth the issues Plaintiff plans to present on appeal. *See* FED. R. APP. P. 24(a)(1)(C).

On the other hand, if Plaintiff wants to start with the undersigned, he can file a motion to alter or amend the judgment under Federal Rule of Civil Procedure 59(e), but such a motion is not required to preserve his appellate rights. Any Rule 59(e) motion *must* be filed within twenty-eight (28) days of the entry of judgment. FED. R. CIV. P. 59(e), and the deadline *cannot* be extended. *See* FED. R. CIV. P. 6(b)(2). Any motion must also comply

with Rule 7(b)(1) and state with sufficient particularity the reason(s) that the Court should reconsider the judgment. *Talano v. Nw. Med. Faculty Found., Inc.*, 273 F.3d 757, 760 (7th Cir. 2001). *See also Elustra v. Mineo*, 595 F.3d 699, 707 (7th Cir. 2010) ("This court has held that otherwise timely skeletal motions that fail to satisfy the requirements of FED. R. CIV. P. 7(b)(1) do not postpone the 30–day period for filing a notice of appeal . . . .").

So long as the Rule 59(e) motion is in proper form and filed no later than 28 days after the judgment is entered, the 30-day clock for filing a notice of appeal will be stopped. FED. R.APP. P. 4(a)(4). The clock will start anew once the motion is ruled on. FED. R.APP. P. 4(a)(1)(A), (a)(4), (a)(4)(B)(ii). To be clear, if the Rule 59(e) motion is filed outside the 28-day deadline or "completely devoid of substance," the motion will not stop the clock for filing a notice of appeal, and the clock will expire 30 days from the entry of judgment. *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 826 (7th Cir. 2014); *Talano v. Northwestern Medical Faculty Foundation, Inc.*, 273 F.3d 757, 760–61 (7th Cir. 2001); *Martinez v. Trainor,* 556 F.2d 818, 819–20 (7th Cir. 1977). Again, the deadline for filing a notice of appeal can be extended only on a written motion by Plaintiff showing excusable neglect or good cause.